UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JOYCE WOLF,

                Plaintiff,        <u>OPINION</u>

      -against-          07 Civ. 11372 (MGC)


NEW YORK CITY DEPARTMENT OF EDUCATION,
"DOE", and LAURA RODRIGUEZ
In her official capacity as
Superintendent of Region 10, and
Laura Rodriguez, Individually,

                Defendants.

----------------------------------X

APPEARANCES:

    WOLF & WOLF LLP
    Attorneys for Plaintiff
    910 Grand Concourse, Suite 1F
    Bronx, New York 10451

    By:  Edward H. Wolf, Esq.
         Jason M. Wolf, Esq.

    CORPORATION COUNSEL OF THE CITY OF NEW YORK
    Attorneys for Defendants
    100 Church Street, Room 2-143
    New York, New York 10007

    By:  Basil C. Sitaras, Esq.


**Cedarbaum, J.**

Joyce Wolf sues the New York City Department of Education ("BOE") and Laura Rodriguez (collectively, "Defendants") for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law ("SHRL"), N.Y. Exec. Law § 296 et seq.  The complaint alleges that Defendants discriminated against her on the basis of her ethnic and racial background.  Defendants move for summary judgment on all of Plaintiff's claims.  For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

The following facts are undisputed, except where specifically noted.

Plaintiff is Caucasian and has been employed by the BOE since 1981.  She has served as an Assistant Principal at Public School 72 ("P.S. 72") since August of 2001.  Plaintiff previously served at Intermediate School 131 as Interim Assistant Principal from 1991 to 1993, and Assistant Principal from 1993 to 2001.

Margarita Colon is Hispanic and has been employed by the BOE since 1985.  Ms. Colon served as an Assistant Principal at Albert Einstein Intermediate School 131 from September of 1996 through February of 2007.

In the fall of 2006, Maria DeSalvio, then the Principal of P.S. 72, determined that she needed to retire for medical

reasons. She spoke to her Local Instructional Superintendent ("LIS"), Althea Serrant, who organized a meeting with Regional Superintendent Laura Rodriguez. In December of 2006, Ms. DeSalvio informed Ms. Rodriguez, Ms. Serrant, and Deputy Regional Superintendent Jose Ruiz that she planned to retire before the conclusion of the academic year. At the time of Ms. DeSalvio's retirement, P.S. 72 was designated a "School in Need of Improvement (SINI)."

    Ms. DeSalvio affirms that at the December meeting regarding her retirement, Ms. Rodriguez "indicated that it was time for a minority to be principal of Public School 72," and that Ms. Serrant and Mr. Ruiz sat silently and did not object to this comment. (DeSalvio Aff., ¶ 19.) Although an outgoing principal has no authority to name her successor, in her affidavit, Ms. DeSalvio swears that she recommended Plaintiff for the position on both an interim and permanent basis and advocated in her favor. According to Ms. DeSalvio, Ms. Rodriguez "nodded her head in a negative fashion" and "continued to reject [DeSalvio's] proposals and reiterate that it was time for a minority." (DeSalvio Aff., ¶ 21.) For the purposes of this motion, Defendants concede that Ms. Rodriguez commented that "it was time for a minority [principal]."

**I.  Selection of Interim Acting Principal**

3

The parties agree that Regulation C-30 of the Chancellor of the New York City Department of Education ("Regulation C-30") governs the selection process for principals.  Section XI provides for interim acting assignments as follows:

> Appointing authorities should anticipate, post, and complete the selection process by the time a vacancy actually occurs.  If this is not possible, an interim acting supervisor may be assigned temporarily by the appointing superintendent for principal positions . . . .  The process used to place a supervisor in an interim acting assignment is not to be used to substitute [for] the interview and selection process outlined in the regulation [for permanent positions].

(Regulation C-30, Section XI.)  Ms. Serrant was the appointing superintendent for P.S. 72.

In January of 2007, a five-person panel consisting of Ms. Serrant, Ms. Rodriguez, Mr. Ruiz, LIS Dov Rokeach, and LIS Irene Rogan, conducted interviews of Plaintiff and Ms. Colon for the position of Interim Acting Principal of P.S. 72.  Three of the panel members were ethnic or racial minorities,[1] and every member reported to Ms. Rodriguez.

Following the interviews, Ms. Colon was selected to serve as Interim Acting Principal of P.S. 72.  Defendants have offered testimonial and documentary evidence, the truth of which Plaintiff contests, that Ms. Colon was selected for her superior

---

[1] The racial backgrounds of the panel members are as follows: Ms. Rodriguez and Mr. Ruiz are Hispanic; Ms. Serrant is African-American; and Mr. Rokeach and Ms. Rogan are Caucasian.

4

instructional knowledge regarding ways to improve student achievement.  In particular, the Defendants have submitted a memorandum on BOE letterhead containing the interviewing panel's evaluation.  The memorandum states that "Ms. Margarita Colon demonstrated the ability to meet the needs of the School In Need of Improvement," while Plaintiff "did not demonstrate her instructional knowledge in leading a school to improve student achievement."  (Sitaras Decl., Ex. D.)

## II.  Selection of Principal

The Principal selection process includes two steps under Regulation C-30:  Level I and Level II.  At Level I, a committee comprised of constituents of the relevant school interviews and rates candidates submitted to it by the appointing superintendent.  Those ratings are then submitted to the appointing superintendent for evaluation pursuant to Level II, which proceeds according to the following procedure:

> At Level II, the appointing superintendent . . . should
> consider the ratings, evaluations, and recommendations
> submitted by the Level I Committee and may interview
> the candidates and/or utilize other professional
> evaluation techniques . . . .  The appointing
> superintendent makes principal appointments.  Principal
> appointments are subject to rejection for cause by the
> Regional Superintendent, on behalf of the Chancellor.

(Regulation C-30, Section X.D.)  If the appointing superintendent makes no selection after evaluating the candidates, the position may be readvertised.

During the selection process for Principal of P.S. 72, the Level I Committee was comprised of nine individuals.  The racial backgrounds of committee members were as follows:  Five identified as white/Caucasian; two identified as black/African-American; one identified as Hispanic; the racial background of the final member is unknown.

As the appointing superintendent, Ms. Serrant reviewed the applications for the position, and selected five individuals as candidates to be interviewed by the Level I Committee: Plaintiff, Ms. Colon, Rodney Murphy, Erica Zeigelman, and Regina Hays.

On June 20, 2007, the Level I Committee interviewed Plaintiff, Ms. Colon, and Mr. Murphy for the position. The other two candidates declined to be interviewed.  After completing the interviews, each committee member evaluated each candidate on a scale of one to five in seven distinct categories,[2] with a five denoting "excellent."  Thus, the highest cumulative score a candidate could receive was 315.  Ms. Colon received a score of 245 points; Plaintiff received 177 points; and Mr. Murphy received 145 points.  In addition, seven members of the committee

---

[2] Although the parties agree that the candidates were evaluated with respect to six categories, the documentation provided by Defendants shows that the candidates were in fact evaluated with respect to seven categories.  The categories included criteria addressing the candidates' educational, managerial, and administrative qualifications.

6

gave their highest individual score to Ms. Colon, while two members gave Plaintiff their highest score.  Plaintiff offers no evidence of ethnic or racial bias in the Level I evaluation of candidates for Principal of P.S. 72.

The Level I Committee ratings were then submitted to Ms. Serrant for consideration pursuant to Level II.  Ms. Serrant interviewed the highest-rated candidate, Ms. Colon, and selected her for the position.  Apart from advancing the argument that Ms. Serrant adopted Ms. Rodriguez's view that "it was time for a minority" by remaining silent when Ms. Rodriguez spoke those words, Plaintiff offers no evidence of ethnic or racial bias as part of the Level II evaluation.

### III.  Plaintiff's Complaint

On or about February 26, 2007, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights alleging that Defendants discriminated against Plaintiff on the basis of her age and race in selecting Ms. Colon as Interim Acting Principal.  This complaint was forwarded to the United States Equal Employment Opportunity Commission ("EEOC"), and in September of 2007, the EEOC issued Plaintiff a right to sue letter.

Plaintiff brought this suit in December of 2007, and filed an amended complaint on June 15, 2009, alleging employment discrimination based upon her ethnic and racial background.[3]

**DISCUSSION**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). In deciding whether a genuine issue exists, the court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

The court must consider a motion for summary judgment on a claim of discrimination arising under Title VII in light of the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).[4] The Second Circuit has explained that under

---

[3] Plaintiff withdrew her age discrimination claims with prejudice.
[4] Because New York courts apply the same standard of proof for discrimination claims under the SHRL as for discrimination claims

8

McDonnell Douglas, a plaintiff who makes a prima facie case of discrimination will be entitled to judgment as a matter of law if the employer fails to adduce any evidence of a legitimate, nondiscriminatory reason for its actions (assuming the other aspects of a prima facie case are uncontested). See James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).  However, if the employer provides evidence of a nondiscriminatory reason after the plaintiff makes its prima facie case, "the McDonnell Douglas presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."  Id. at 156 (discussing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000)).

In determining whether the plaintiff has produced evidence that would permit a reasonable finder of fact to conclude that discrimination occurred, the court should consider factors including "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'"  Id. at 156 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109).

---

under Title VII, see, e.g., Miller Brewing Co. v. State Div. of Human Rights, 66 N.Y.2d 937, 938 (1985), Plaintiff's claims are considered simultaneously.

9

Applying this standard for discrimination actions, the Second Circuit has found summary judgment appropriate where the plaintiff has established only a minimal prima facie case and weak evidence that the employer's legitimate explanation should be rejected in the face of abundant evidence that no discrimination occurred.  See id. at 157 (finding summary judgment appropriate because the evidence taken as a whole could not reasonably support inference of discrimination); see also Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001) (same); Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (same).  Accordingly, Defendants are entitled to summary judgment if the evidence, taken as a whole, cannot support a reasonable inference that Plaintiff was passed over for a promotion at P.S. 72 because of her ethnic and racial background.

**I.  Plaintiff's Prima Facie Case**

Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.  Plaintiff can meet that burden here by showing that:  (1) she was within a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of racial discrimination.   See Hollander v. Am. Cyanamid Co., 172 F.3d 192, 199 (2d. Cir. 1999),

10

abrogated on other grounds by Reeves, 530 U.S at 148, 120 S. Ct. at 2109.  The burden of establishing a prima facie case is "minimal."  Id.

Defendants concede for the purposes of summary judgment that Plaintiff has established the first three elements of a prima facie case, but argue that Plaintiff has failed to adduce evidence giving rise to an inference of racial discrimination in the selection of either the Interim Acting Principal or permanent Principal of P.S. 72.[5]

Plaintiff's evidentiary showing rests almost entirely on Ms. Rodriguez's comment that "it was time for a minority" to run P.S. 72.  Plaintiff argues that because Ms. Serrant and Mr. Ruiz were present and sat silently when Ms. Rodriguez made the comment, that view can be imputed to a majority of the panel that interviewed the candidates for the interim position.  Given this context, Plaintiff argues that the decision to pass over Plaintiff in favor of a minority candidate, Ms. Colon, gives rise to an inference of discrimination in the selection of Interim Acting Principal.

Plaintiff extends this argument to the appointment of Ms. Colon as Principal.  That is, although Plaintiff agrees that the Principal was selected according to the process required by Regulation C-30, Plaintiff argues that Ms. Serrant's silence in

---

[5] While the interim and permanent selections might ground distinct claims of discrimination, Plaintiff concedes that "there is no logical reason in these proceedings to treat the interim and the final choice of principal as two separate processes."

11

the face of Ms. Rodriguez's comment permits an inference of discrimination in her subsequent appointment of Ms. Colon as Principal.

The Second Circuit has held that, under certain circumstances, a discriminatory remark made by an executive without a direct role in a contested employment decision can be enough to establish a prima facie case of discrimination.  More specifically, statements which suggest an employer's preference for employees with respect to a class protected by Title VII can be sufficient to raise an inference of discrimination.  <u>Slattery</u>, 248 F.3d at 93 ("We hold that such a statement [evincing intention to make workforce younger] from a top executive in the corporate hierarchy can be enough to establish a *prima facie* case – that is, to raise an inference of discrimination sufficient to shift the burden of explanation onto the defendant.").  The Court based its holding on the reasoning that comments from management could create a culture of discrimination at an organization.  <u>Id.</u>

In light of the fact that Plaintiff adduces no facts suggesting bias in the Level I Committee's evaluation and only an attenuated theory of bias with regard to the ultimate decisionmaker, Ms. Serrant, there is reason to doubt that Plaintiff has shown facts giving rise to an inference of discrimination in the selection of Ms. Colon over Plaintiff.  However, because the required showing is "minimal" and the

regional superintendent made a remark suggesting a race-based preference for Principal of P.S. 72, I will assume that Plaintiff has made a prima facie case.

## II.  Defendants' Nondiscriminatory Explanation

Once a plaintiff makes a prima facie case under Title VII, the burden shifts to the employer to rebut that showing by providing a legitimate, nondiscriminatory reason for its actions. See McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Hollander, 172 F.3d at 199.  Defendants offer ample evidence that Ms. Colon was selected instead of Plaintiff as both the Interim Acting and Principal and Principal of P.S. 72 because she was the candidate best suited to improve a "School in Need of Improvement (SINI)."

With respect to the interim assignment, Defendants have submitted a memorandum on BOE letterhead containing the interviewing panel's evaluation of the candidates.  The memorandum states that "Ms. Margarita Colon demonstrated the ability to meet the needs of the School In Need of Improvement," while Plaintiff "did not demonstrate her instructional knowledge in leading a school to improve student achievement."  (Sitaras Decl., Ex. D.)  Moreover, Ms. Rodriguez has submitted a sworn declaration that Ms. Colon was selected for the interim assignment for her superior instructional knowledge regarding ways to improve student achievement.

13

Defendants have also submitted documentation of the formal Principal selection process pursuant to Regulation C-30.  The Level I Committee, with members of diverse backgrounds, interviewed three candidates for the permanent position and rated them each individually on criteria addressing their educational, managerial, and administrative qualifications.  Ms. Colon received the highest cumulative score from the committee, 245 points, while Plaintiff received 177 points, and the third candidate, 145 points.  Those ratings were submitted to Ms. Serrant for consideration pursuant to Level II, and she selected Ms. Colon for the position after a further interview.

Defendants have therefore provided ample evidence that Ms. Colon was chosen over Plaintiff in both instances for the legitimate reason that Defendants believed that she was better suited to help turn around a "School in Need of Improvement (SINI)."

**III.  Inference of Discrimination**

Since Defendants have articulated a legitimate reason for selecting Ms. Colon instead of Plaintiff to serve as the Interim Acting Principal and Principal of P.S. 72, the governing standard on this motion for summary judgment is simply whether the evidence, taken in its entirety, can support a reasonable inference that discrimination occurred.  See James, 233 F.3d at 156.  In other words, the question is whether the evidence would

14

permit a reasonable jury to find that ethnic or racial discrimination motivated Defendants' decision to pass over Plaintiff in favor of Ms. Colon.

Plaintiff has made, at best, a weak prima facie case of discrimination. The only evidence Plaintiff proffers is the statement of Ms. Rodriguez that "it was time for a minority" Principal of P.S. 72. Because Ms. Rodriguez was not the appointing superintendent, an inference of discriminatory bias requires the intermediate conclusion that the comment was indicative of a culture of discrimination at the BOE or that the decisionmaker, Ms. Serrant, endorsed such a view. Plaintiff has adduced no evidence in support of this intermediate conclusion. Plaintiff also proffers no evidence of bias in the formal hiring process provided in Regulation C-30.

In contrast to Plaintiff's minimal showing, Defendants have provided significant evidence that no discrimination occurred in the selection of the new Principal of P.S. 72. Defendants have documented an extensive hiring process pursuant to Regulation C-30, which included interviews and numerical ratings by a diverse group of deciders and culminated in the selection of Ms. Colon. The ultimate burden of proving discrimination rests with the Plaintiff, and based upon the entirety of the record, no jury could reasonably conclude that discrimination occurred in this case.

**IV.   Additional Grounds Raised by Defendants**

Because no reasonable jury could conclude that Plaintiff met her burden of proving discrimination, other grounds for summary judgment argued by Defendants need not be reached.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on all of Plaintiff's claims is granted and the complaint is dismissed.  The Clerk is directed to close this case.

SO ORDERED.

Dated:   New York, New York
         April 14, 2010

                                      S/_____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge